UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANSELMO A. PEDROZA,**<br>                             Petitioner,<br>   v.<br>**JAMES HALL, Warden,**<br>                             Respondent. | CASE NO. 05cv2169 BTM (PCL)<br><br>**REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

**I. FEDERAL PROCEEDINGS**

On November 23, 2005, Anselmo A. Pedroza ("Petitioner"), a state prisoner currently incarcerated at Ironwood State Prison, proceeding *pro se* and *informa pauperis*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) James Hall ("Respondent") filed an Answer to the Petition along with a Memorandum of Points and Authorities in support thereof ("Ans. Mem."), and lodged portions of the state court record. (Doc. Nos. 5-7.)

On June 13, 2006, Petitioner sought to stay these habeas proceedings while he returned to state court to exhaust newly discovered claims.[1] The motion was denied by Judge Moskowitz. (Doc. No. 21.) Lastly, Petitioner filed a Traverse. (Doc. No. 22.)

---

[1] Petitioner claimed "for the first time that his trial counsel was ineffective because he advised him to decline a plea agreement offer by the District Attorney." (Doc. No. 12 at 2.) He also "for the first time argued that his appellate counsel was ineffective for not raising in Petitioner's appeal the issue of ineffective assistance of counsel." (Id.)

## II. STATE PROCEEDINGS

On July 22, 2003, in the Superior Court of San Diego County, Petitioner was found guilty by a jury of three counts of second-degree murder (CAL. PENAL CODE § 187(a)), two counts of assault with a deadly weapon or with force likely to produce great bodily injury (Id. § 245(a)(1)), and one count of felony child abuse (Id. § 273a(a)).  (Lodgment No. 1 at 751-752.)  At a later date, Petitioner was sentenced to three concurrent terms of fifteen years to life on counts one, two, and three (second-degree murder); consecutive terms of one year on counts four and five (assault with a deadly weapon); and four years on count six (child abuse).  (Lodgment No. 1 at 1008-1010.)

Petitioner filed a direct appeal of his conviction and sentence with the California Court of Appeal ("Court of Appeal"), Fourth Appellate District, Division One, in case number D043423.  (Pet. Ex. D.) The Court of Appeal AFFIRMED Petitioner's conviction and sentence.  (Id. at 1, 15.)  Thereafter, Petitioner filed a Petition for Review in the California Supreme Court; the Petition was DENIED.  (Pet. Ex. E.)

## III. UNDERLYING FACTS

The Court of Appeal's opinion affirming Petitioner's conviction provides a pithy factual summary:[2]

> [Petitioner] and his accomplice Carlos Moreno smuggled a group of [thirteen] immigrants from Mexico in the bed of a pickup truck.[3]  Moreno was driving and [Petitioner] was a passenger.  When agents from the United States Border Patrol began chasing the pickup, Moreno and [Petitioner] did not stop and crashed, killing three of the immigrants and injuring several others, including a young child.

(Pet. Ex. D at 1-2.)

///

///

---

[2] The facts of the underlying offense are not disputed in this matter. Nonetheless, it should be noted that the Court gives deference to state court findings of fact and presumes them to be correct. Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1) (West Supp. 2005); see also Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts).

[3] The Court of Appeal clarified that: "A child in the group, Christian Garcia, was a United States citizen. When [the Court of Appeal] refer[s] to the group collectively as the 'immigrants' in this opinion, [the court] therefore exclude[s] this individual from reference." (Pet. Ex. D n.1)

## IV. PETITIONER'S CLAIMS

Two issues are raised in the current habeas petition:

(1) Whether the criminal jury instructions ("CALJIC") Nos. 3.01 and 3.02, defining aiding and abetting and the doctrine for natural and probable consequences, violated Petitioner's "right to due process and a fair jury trial."

(2) Whether CALJIC No. 6.11, defining a conspirator's liability for the acts of a co-conspirator, violated Petitioner's "right to due process and a fair jury trial."

(Pet. at 3, 8.)

## V. STANDARD OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C.A. § 2254(a) (West 2005) (emphasis added).

The present Petition was filed after the President signed into law the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West Supp. 2005).

A state court's decision may be found to be "contrary to" clearly established United States Supreme Court ("Supreme Court") precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different

from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or, "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 407.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . Rather, that application must be objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S.63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." <u>Williams</u>, 529 U.S. at 412.

Finally, habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C.A. § 2254(d)(2) (West Supp. 2005). In order to satisfy this provision, Petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claim rests are objectively unreasonable, assuming it rests on a factual determination. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). This Court will presume the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1) (West Supp. 2005).

## VI. DISCUSSION

**A.    Petitioner is <u>Not</u> Entitled to Habeas Relief on the Basis of Claim One**

*1.    CALJIC No. 3.01 and 3.02*

Petitioner asserts that CALJIC Nos. 3.01 and 3.02, instructions at his state trial defining aiding and abetting (3.01) and the doctrine for natural and probable consequences (3.02), violated his "right to due process and a fair jury trial." (Pet. at 3.) Specifically, Petitioner contends that the instructions precipitously lowered the requisite *mens rea* for the underlying crimes below that demanded by the United States Constitution .

1    Petitioner argues CALJIC No. 3.01,[4] defining aider and abettor liability, "requires merely that an
2 aider and abettor have knowledge of the perpetrator's 'unlawful purpose,' a vague concept nowhere
3 adequately defined..." (Pet. at 45.) Rather, the theory of aiding and abetting, Petitioner insists,
4 presupposes "that at least two people acted together to commit a crime, and that the defendant who is
5 being subjected to vicarious liability had knowledge of and an intent to facilitate the criminal act of
6 another." (Pet. at 46.)(citing see People v. Slaughter, 35 Cal.3d 629, 659-660 (1984); see also People v.
7 Ford, 25 Cal. App 388, 397 (1914).) Although he assisted Moreno in alien smuggling, Petitioner
8 continues, he did not have the intent to drive away from Border Patrol; nor did he assist Moreno in the
9 attempted escape. Accordingly, Petitioner concludes, he did not have the *mens rea* for murder.

10    As to CALJIC No 3.02,[5] detailing the natural and probable consequences doctrine, Petitioner

---

[4] As given, CALJIC 3.01 read:

A person aids and abets the commission or attempted commission of a crime when he or she:

(1) With knowledge of the unlawful purpose of the perpetrator, and

(2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and

(3) By act or advice aids, promotes, encourages or instigates the commission of the crime.

A person who aids and abets the commission or attempted commission of a crime need not be present at the scene of the crime.

Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.

Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.
(Lodgment 1 at 654-655.)

[5] As given, CALJIC 3.02 read:

One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted.

In order to find the defendant guilty of the crime of murder, as charged in Counts One, Two, Three, Four, Five and Six, you must be satisfied beyond a reasonable doubt that:

(1) The crime or crimes of Alien Smuggling and/or Alien Transportation were committed;

(2) That the defendant aided and abetted those crimes;

argues the instruction permitted his conviction "on the basis of a *mens rea* no more culpable than negligence." (Pet. at 42.) Petitioner claims that criminal liability based on negligence is Constitutionally frowned upon. (Pet. at 54.)(citing Staples v. United States, 511 U.S. 600, 605 (1994); Morissette v. United States, 342 U.S. 246, 250-251 (1952); People v. Simon, 9 Cal.4th 493, 519-520 (1995).) Petitioner remonstrates that he clearly lacked the requisite malice to be guilty of murder. (Pet. at 58.) Instead, he argues, the jury convicted him because they found Petitioner should have known – a negligence standard – that when he smuggled aliens his partner, Moreno, leading a jeopardous getaway was a natural and probable consequence.

Respondent counters that Petitioner has repackaged state claims in Constitutional due process wrappings, and that his claims are "not cognizable on federal habeas corpus." (Ans. Mem. at 7.)

*2. Analysis*

At this juncture it would be worthwhile to emphasis, by repeating, the standard of review. The AEDPA requires this Court to "defer to the state court's determination of the federal issues unless that determination is 'contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 75-76 (emphasis added). And by "federal law" the AEDPA refers only to the jurisprudence determined personally by the Supreme Court. 28 U.S.C. § 2254(d)(1); Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996)(stating "[s]o [Petitioner] must be able to point to an authoritative decision of the Supreme Court in order to secure a writ."), rev'd on other grounds, 521 U.S.

---

(3) That a co-principal in that crime committed the crimes of Murder, Assault with a Deadly Weapon, and Child Endangerment; and

(4) The crimes of Murder, Assault with a Deadly Weapon, and Child Endangerment were a natural and probable consequence of the commission of the crimes of Alien Smuggling and/or Alien Transportation.

You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime of Murder, Assault with a Deadly Weapon, and Child Endangerment were a natural and probable consequence of the commission of that target crime.

Whether a consequence is "natural and probable" is an objective test, based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected would be likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. A "natural consequence" is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. "Probable" means likely to happen. (Lodgment 1 at 655-656.)

320 (1997).

Here, there is no applicable "clearly established federal law." Granted, Petitioner cites to a surfeit of Supreme Court cases, however, there is not a single holding on point. For instance, one of the cases in this library of authority is Staples. The issue in Staples is whether 26 U.S.C. section 5861, a statute forbidding the possession of a firearm without first registering the hardware with the National Firearms Registration, requires a *mens rea*. Staples, 511 U.S. at 604. While the decision provides an absorbing discussion on the presumption of *mens rea* versus public welfare offenses, the Supreme Court's interpretation of a Congressionally authored statute has no bearing on California's natural and probable consequence doctrine. Id. at 601 (stating "the holding here is a narrow one"). Petitioner cannot cite apposite Supreme Court authority because none exists.

Petitioner's genuine gripe concerns the interpretation of state law. However, claims that allege only a violation of state law do not present a federal question. Hughes v. Heinze, 268 F.2d 864, 869-870 (9th Cir. 1959) ("We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question."); see also Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) (holding that a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process," and that "alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings). Jury instructions, like CALJIC 3.01 and 3.02, as explanations of state law, belong – not unsurprisingly – almost exclusively to the province of the state courts. Chance v. Garrison, 537 F.2d 1212, 1215 (4th Cir. 1976); Shepard v. Nelson, 432 F.2d 1045, 1046 (9th Cir. 1970). See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). The Supreme Court has admonished federal courts reviewing habeas petitions that they are bound by "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction..." Bradshaw v. Richey, 546 U.S. 74, 74 (2005). In Petitioner's case the Court of Appeal decidedly rejected his claims. After explaining the relevant California law the Court of Appeal concludes:

> [T]he jury was not required to find that Pedroza shared Moreno's intent to commit second-degree murder. It was Pedroza's intent to encourage and facilitate the target offense, alien smuggling and transporting, that the jury was required to, and did, find. The intent to bring about this target offense supplies the necessary *mens rea* upon

>   which Pedroza's culpability rests.  The jury did not find Pedroza liable based upon his
>   negligence, but upon his intent to smuggle and transport aliens... The court did not err
>   in its instructions on aiding and abetting and the natural and probable consequence
>   doctrine.

(Pet. Ex. B at 117-119.)

The Court is bound by this ruling – Petitioner, too. The Court of Appeal's decision is not "objectively unreasonable," there is no clearly established federal law in play to be unreasonably applied.[6] Lockyer, 538 U.S. at 75-76. No Supreme Court case has held that California's aiding and abetting principles, as set forth in CALJIC 3.01, improperly permits conviction with too low a *mens rea*. No Supreme Court case has held that California's natural and probable consequence doctrine, as set forth in CALJIC 3.02, improperly permits conviction on a negligence standard. Cf. Solis v. Garcia, 219 F.3d 922, 926-927 (9th Cir. 2000)( rejecting the argument CALJIC 3.02 relieves the prosecution of its burden of proving all elements of the crime.) Simply put, Petitioner has failed to state a claim on which habeas relief can be granted. Accordingly, this claim should be DENIED.

### B. Petitioner is Not Entitled to Habeas Relief on the Basis of Claim Two

*1.    CALJIC No. 6.11*

In claim two, Petitioner again takes issue with a jury instruction, this time CALJIC No. 6.11, an instruction on conspiracy and the natural and probable consequence doctrine. Petitioner, who was not charged with conspiracy, reads CALJIC No. 6.11 as "permit[ing] the jury to find a defendant guilty of a substantive offense based solely on his participation in an uncharged offense."  (Pet. at 63-64.) Petitioner contends that CALJIC No. 6.11[7] "creates constitutionally impermissible criminal liability for

---

[6] A petitioner may obtain federal collateral relief – that is habeas relief– for errors in a jury charge by demonstrating that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 71-712. See also Cupp v. Naughten, 414 U.S. 141, 147 (1973). The difficulty for Petitioner, as discussed above, is that he cannot show that either of the instructions runs afoul of the Constitution. Compare Ho v. Carey, 332 F.3d 587 (9th Cir. 2003)(granting habeas relief when erroneous jury instruction on mental state element violated federal due process clause).

[7] As given, CALJIC 6.11 read:

Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if that act or declaration is in furtherance of the object of the conspiracy.

an uncharged offense, and creates a mandatory conclusive presumption that a person who engages in a conspiracy to commit the charged substantive offense is automatically guilty of that substantive offense." (Pet. at 64.)

Further, Petitioner argues that CALJIC No. 6.11 applies the natural and probable consequence doctrine in an "over-broad fashion," establishing a more generous standard for derivative liability than even CALJIC No. 3.02. (Id.) Petitioner's argument continues, CALJIC No. 6.11 "permits the target act to be any 'crime or act' which would include not only a criminal act but any overt act, or even any other act, which is not necessarily criminal or unlawful." (Id. at 65.)

2. *Analysis*

Petitioner's well articulated argument, however, fails to provide that ever-important habeas petition ingredient: position-backing Supreme Court authority. Petitioner does not cite a single federal

---

The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators.

A member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime or act of a co-conspirator to further the object of the conspiracy, even though that crime or act was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of that crime or act.

You must determine whether the defendant is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged was perpetrated by a co-conspirator in furtherance of that conspiracy and was a natural and probable consequence of the agreed upon criminal objective of that conspiracy.

Whether a consequence is "natural and probable" you must apply an objective test based not on what the defendant actually intended but on what a person of reasonable and ordinary prudence would have expected would be likely to occur. The issue is to be decided in light of all of the circumstances surrounding the incident. A "natural consequence" is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. "Probable" means likely to happen.

To find the defendant liable for the act of another conspirator the following elements must be proved beyond a reasonable doubt:

(1) The defendant, with knowledge of another's unlawful intent to commit a crime, with an intent that such crime be committed, and with an intent to agree to commit the crime, entered into an agreement to commit the agreed target crime;

(2) A co-conspirator committed an offense other than the agreed target crime; and

(3) The offense committed by the co-conspirator was a natural and probable consequence of the agreed target crime.
(Lodgment 1 at 657-659.)

case.[8]  The Court's own research failed to turn up precedent to support Petitioner's claim.  No Supreme Court case has held that California's theory of derivative liability, as set forth in CALJIC No. 6.11, improperly creates criminal liability or applies the natural and probable consequence doctrine in an over-broad fashion.  To restate, there is no applicable "clearly established federal law."  Rather, Petitioner's second claim is nakedly a state issue tacked on to a federal habeas petition.

However, even as a state claim Petitioner's gravamen lacks meat.  In California, conspiracy serves not only as a substantive offense but also as a theory of criminal liability.  "It is long and firmly established that an uncharged conspiracy may properly be used to prove criminal liability for acts of a coconspirator."  People v. Lopez, 384 P.2d 16, 31 (Cal. 1963).  Where conspiracy in not charged, there is no error under California law in instructing the jury on the law of conspiracy as long as there is proof of the existence of the conspiracy.  Id.  The Court of Appeal said as much in its opinion which held that the instructions given at trial fairly expressed California law.  Singularly, Petitioner agrees: "Petitioner recognizes, as he must, that the present state of California law on aiding and abetting and conspiracy appears to support the decision of the Court of Appeal."[9]  (Pet. at 85.)

As to Petitioner's claim evaluated under federal habeas standards, the Court of Appeal's decision is not "objectively unreasonable."  As noted, there is no clearly established federal law at stake to be unreasonably applied.  Petitioner has failed to state a claim on which habeas relief can be granted.  Accordingly, this claim should be DENIED.

///
///
///
///
///
///

---

[8]  Petitioner's does make the customary appeal to the Fifth, Sixth and Fourteenth Amendments of the Constitution without elaboration.  (Pet. at 67, 104.)

[9] Petitioner then goes on to argue, "nevertheless,...the California law as stated in the challenged instructions and applied in this case, violates federal and state constitutional guarantees of due process and a fair jury trial."  (Pet. at 85.)

# VII. CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgement be entered DENYING the Petition.

IT IS ORDERED that, **no later than April 23, 2007**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." Any reply to Objections shall be filed **on or before April 30, 2007**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 21, 2007

_____
Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc: The Honorable Barry Ted Moskowitz
     All Counsel of Record